UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**BRENDA GANHEART**     **CIVIL ACTION**

**VERSUS**     **No. 17-43**

**CHARLES BROWN ET AL.**     **SECTION I**

## ORDER AND REASONS

Brenda Ganheart works in the library system for the City of New Orleans ("City"). According to Ganheart, over the past several years library personnel have taken certain actions against her that have violated her rights under both the U.S. Constitution and Title VII.

The Court previously dismissed[1] Ganheart's complaint for failure to state a claim, but invited Ganheart to amend her complaint. Ganheart accepted the Court's invitation, and timely filed an amended complaint and supplementary materials ("amended complaint").[2] The City now moves to dismiss[3] that amended complaint. Ganheart did not respond to or oppose the City's motion.

### I.

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to seek dismissal of a complaint for "failure to state a claim upon which relief can be granted." The Court accepts all well-pleaded factual allegations in the complaint as true and

---

[1] R. Doc. No. 20.
[2] *See* R. Doc. No. 23; R. Doc. No. 23-1; R. Doc. No. 26 (styled as an amended complaint); R. Doc. No. 26-1; R. Doc. No. 26-2.
[3] R. Doc. No. 28.

1

construes them in the light most favorable to the plaintiff. *Calhoun v. Hargrove*, 312 F.3d 730, 733 (5th Cir. 2002).

For the complaint to survive a Rule 12(b)(6) motion to dismiss, the facts taken as true must state a claim that is plausible on its face. *Brand Coupon Network, L.L.C. v. Catalina Marketing Corp.*, 748 F.3d 631, 634 (5th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Culbertson v. Lykos*, 790 F.3d 608, 616 (5th Cir. 2015) (internal quotation marks omitted). "It is well-established that pro se complaints are held to less stringent standards than formal pleadings drafted by lawyers." *Clark*, 312 F.3d at 733 (internal quotation marks omitted). However, even a pro se complaint is insufficient where it contains "only labels and conclusions, or a formulaic recitation of the elements of a cause of action." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (citation omitted) (internal quotation marks omitted).

## II.

In its previous Order and Reasons, the Court identified five claims in Ganheart's complaint.[4] The Court dismissed one claim—a retaliation claim relating

---

[4] R. Doc. No. 20, at 1.

to a 2014 reprimand and demotion—with prejudice.[5] That left Ganheart with four claims that the Court dismissed without prejudice: a retaliation claim related to a 2016 demotion; a retaliation claim related to a 2015 performance evaluation;[6] a hostile workplace claim; and a constitutional due process claim.[7] The Court discerns no additional claims in Ganheart's amended complaint.

After reviewing the amended complaint, the Court concludes that dismissal of Ganheart's remaining claims is warranted.

### A.

First, Ganheart continues to assert a claim related to her 2016 demotion.[8] However, as the Court informed Ganheart in its previous Order and Reasons,[9] "[e]mployment discrimination plaintiffs *must* exhaust administrative remedies before pursuing claims in federal court." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002) (emphasis added). "Exhaustion occurs when the plaintiff files a timely charge with the EEOC and receives a statutory notice of right to sue." *Id.* at 379. Ganheart has not demonstrated that she has exhausted her administrative remedies with respect to this claim and so the Court must dismiss this claim again.

### B.

---

[5] *Id.* at 5.
[6] The 2015 performance evaluation encompasses the period between January 2014 and December 2014. *See* R. Doc. No 23, at 2; R. Doc. No. 26-2, at 3.
[7] R. Doc. No. 20, at 5.
[8] *See* R. Doc. No. 23, at 1; R. Doc. No. 26, at 3.
[9] *See* R. Doc. No. 20, at 3.

3

Moreover, Ganheart has still failed to plead sufficient facts to support a hostile work environment claim. "A plaintiff may establish a Title VII violation based on race discrimination creating a hostile work environment." *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002). To do so, a plaintiff must show:

> (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was *based on race*; (4) the harassment complained of affected a term, condition, or privilege of employment;[10] (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.

*Id.* (emphasis added)

Ganheart alleges that she was "micro-manage[d]" by her supervisors and "harassed and bullied by a co-worker who was previously a subordinate."[11] With respect to the alleged harassment, Ganheart contends that her colleague "constantly interfered with my instructions to the staff regarding duties" and "constantly [told Ganheart] and other staff members that [she] could not tell them what to do because [she] was not their supervisor."[12] Ganheart also contends that, on at least one

---

[10] To "affect[ ] a term, condition, or privilege of employment," a plaintiff must show "that the harassment complained of was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Brown v. Liberty Mut. Group, Inc.*, 616 Fed. App'x 654, 657 (5th Cir. 2015) (internal quotation marks omitted); *see also Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012). In determining whether a hostile work environment exists in a workplace, courts consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Ramsey*, 286 F.3d at 268.
[11] R. Doc. No. 26-2, at 1.
[12] *Id.* at 2.

occasion, her colleague "yelled at [her] several times and ordered [her] to the service desk."[13]

Even if liberally construed, these allegations are ultimately "job-related criticisms" that have nothing to do with Ganheart's race. *Id.* As such, Ganheart has fallen short of stating a viable hostile workplace environment claim. *Cf. Kang v. Bd. of Supervisors of La. St. Univ.*, 75 Fed. App'x 974, 976 (5th Cir. 2003) (per curiam) (concluding that receiving a "poor performance evaluation," being "written up," and being publicly criticized in front of colleagues, *id.* at 975-76, does not rise to the level of showing a hostile work environment); *Ramsey*, 286 F.3d at 269 ("[The plaintiff] alleges that she 'suffered ongoing racial harassment from black females,' but points to no concrete examples.").

## C.

Ganheart also fails to adequately plead a constitutional—*i.e.*, procedural—due process claim. The Court's previous Order and Reasons explained that this claim appears based on Ganheart's alleged denial of access to certain documents during an administrative appeal.[14] In her amended complaint, Ganheart renews her objection to the denial of access to these documents.[15] Ganheart also alleges that "defendant's policy [for addressing employee harassment claims] required that I utilize their manipulative and fraudulently communicated administrative process."[16] These

---

[13] *Id.* at 3.
[14] R. Doc. No. 20, at 4.
[15] *See* R. Doc. No. 26, at 3.
[16] R. Doc. No. 23, at 1.

5

"threadbare allegations do not establish that [Ganheart's] constitutional rights were violated."[17] *See Meza v. Livingston*, 607 F.3d 392, 402 (5th Cir. 2010) (discussing *Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976)). This claim is subject to dismissal.

## D.

Lastly, Ganheart alleges a retaliation claim related to her 2015 performance evaluation,[18] which—despite Ganheart's reference to the year 2015—allegedly reflected her 2014 performance. The Court previously dismissed this claim for failure to allege illegal conduct on the part of any of her supervisors.[19]

### i.

Title VII provides that "[i]t shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "To establish a prima facie case of retaliation [under Title VII], the plaintiff must establish that: (1) [she]

---

[17] R. Doc. No. 20, at 4.
[18] R. Doc. No. 23, at 2. In her amended complaint, Ganheart contends that the alleged change to her performance evaluation score took place in December 2014. *See* R. Doc. No. 26, at 3. Taken as true, this allegation indicates that Ganheart's claim related to the 2015 performance evaluation may be subject to dismissal as untimely: she filed her charge with the EEOC on November 6, 2015, *see* R. Doc. No. 20, at 3, which would be over 300 days after the allegedly unlawful employment practice. *See* Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 109 (2002). However, the City does not raise this issue in its memorandum in support of its motion to dismiss. *See* R. Doc. No. 28. The argument is therefore waived. *See, e.g., Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, 66 F. Supp. 3d 795, 811 (E.D. Tex. 2014) (noting that "[f]ailure to raise an argument in a motion waives the argument" and citing cases).
[19] R. Doc. No. 20, at 3-4.

6

participated in an activity protected by Title VII; (2) [her] employer took an adverse employment action against [her]; and (3) a causal connection exists between the protected activity and the adverse employment action." *McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007).

"An employee has engaged in activity protected by Title VII if she has either (1) 'opposed any practice made an unlawful employment practice' by Title VII or (2) 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' under Title VII." *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996) (quoting 42 U.S.C. § 2000e-3(a)). An employee relying on this first clause must "demonstrate that she had at least a 'reasonable belief' that the practices she opposed were unlawful." *Id.* In this context, the term "oppose" "carries its ordinary meaning": "[t]o resist or antagonize . . .; to contend against; to confront; resist; withstand." *Crawford v. Metro. Gov't of Nashville and Davidson Cty., Tenn.*, 555 U.S. 271, 276 (2009) (quoting Webster's New International Dictionary 1710 (2d ed. 1957)).

With respect to what constitutes an "adverse employment action," the required action is "not limited to workplace-related or employment-related retaliatory acts and harm." *Porter v. Houma Terrebonne Housing Auth. Bd. Of Comm'rs*, 810 F.3d 940, 945 (5th Cir. 2015) (quoting *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006)) (internal quotation marks omitted).

> The key question is whether the challenged action is "materially adverse" in that it is "harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination." The standard is objective, but "the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters."

7

*Id.* at 945-46 (quoting *Burlington N.*, 548 U.S. at 57, 68-69) (alteration in original).

Turning to the "causal connection" requirement, "Title VII retaliation claims must be proved according to traditional principles of but-for causation." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013). "This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Id.* "The proffered evidence must be sufficient to permit a reasonable fact finder to conclude that the decision maker had actual knowledge of the protected activity." *Amie v. El Paso Indep. Sch. Dist.*, 253 Fed. App'x 447, 455 (5th Cir. 2007).

### ii.

Accepting the factual allegations in the amended complaint as true and construing them in the light most favorable to Ganheart, the Court concludes that Ganheart has failed to state a retaliation claim related to the 2015 performance evaluation.

Ganheart—who is African-American—alleges that she "filed a complaint of harassment and bullying in a hostile work environment."[20] Ganheart also alleges that the colleague about whom she complained was Caucasian.[21] Yet Ganheart does not allege any facts showing—or even suggesting— that the harassment was "because of [Ganheart's] race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Unless the alleged harassment is "because of" one of those enumerated

---

[20] R. Doc. No. 26-2, at 2.
[21] *Id.*

8

characteristics, then Ganheart's complaint about that harassment was not "an activity protected by Title VII." *McCoy*, 492 F.3d at 557; *see also Davis v. Dallas Indep. Sch. Dist.*, 448 Fed. App'x 485, 493 (5th Cir. 2011) ("[The plaintiff's] statement . . . does not itself constitute a 'protected activity' within the meaning of Title VII, as this complaint lacked a racial or gender basis." (quoting 42 U.S.C. § 2000e-3(a)); *Harris-Childs v. Medco Health Solutions Inc.*, 169 Fed. App'x 913, 916 (5th Cir. 2006) (per curiam) ("In her appellate brief, Appellant does not allege that she specifically complained of racial or sexual harassment, only harassment. . . . Because she has failed to show that she engaged in a protected activity under Title VII, she cannot show retaliation.").

Ganheart also does not show that she suffered an adverse employment action under Title VII. Based on the facts in this case, the Court sees no basis for concluding that a final rating of "Competent"—even if originally higher—constitutes an adverse employment action.[22] *Cf. Douglas v. DynMcDermott Petro. Operations Co.*, 144 F.3d 364, 373 n.11 (5th Cir. 1998) ("We find it difficult to ascribe as low a 'fully satisfactory' rating."). Moreover, a negative performance evaluation alone may not constitute an adverse employment action under Title VII as a matter of law. *See Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 427 n.19 (5th Cir. 2017) (citing *Douglas*, 144 F.3d at 373 n.11); *Johnson v. McDonald*, 623 Fed. App'x 701, 704 (5th Cir. 2015) (per curiam)

---

[22] Ganheart alleges that one of her supervisors indicated to Ganheart in a meeting about the performance evaluation that "he had considered [Ganheart's] performance at the 'Exceeds Requirement' level." R. Doc. No. 26-2, at 3. According to Ganheart, a second supervisor then "lowered the performance rating . . . from an 'Exceeds' rating to a 'Competent' rating." R. Doc. No. 26, at 3.

9

(observing that "this court has held a low performance evaluation alone is not an adverse employment action" and citing *Douglas*). However, *Douglas*—the Fifth Circuit case on which the *Alkhawaldeh* and *Johnson* panels rely for the proposition that a negative performance evaluation alone is not an "adverse employment action" under Title VII—predates *Burlington Northern*, the seminal U.S. Supreme Court opinion interpreting the phrase "adverse employment action" in Title VII. The Fifth Circuit has recognized that *Burlington Northern* abrogated its prior approach to Title VII retaliation cases. *See McCoy*, 492 F.3d at 559. At least one post-*Burlington Northern* Fifth Circuit opinion has observed that a "downgrade of [an employee's] performance evaluations" *may* in and of itself constitute an adverse employment action *if* it "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Davis*, 448 Fed. App'x at 494 (quoting *Burlington Northern*, 548 U.S. at 68) (internal quotation markets omitted).

In this case, the Court concludes that a rating of "Competent" alone does not rise to the level necessary to "dissuade a reasonable worker from making or supporting a charge of discrimination." *Id.* In fact, Ganheart notes that she had previously received—and not questioned—that same rating and that the supervisor who assigned that final rating had a policy "that no one should be rated higher tha[n] Competent."[23]

Yet even assuming that Ganheart's filing of the harassment complaint was an activity protected by Title VII and that the alleged lowering of her performance

---

[23] *See* R. Doc. No. 26-2, at 3.

10

evaluation rating was an adverse employment action under Title VII, the factual allegations in Ganheart's complaint do not show a "causal connection" between them. *McCoy*, 492 F.3d at 557. At the prima facie stage, temporal proximity can establish a causal link "when it is connected to the decision maker's knowledge of the protected activity." *Thompson v. Somervell Cty., Tex.*, 431 Fed. App'x 338, 342 (5th Cir. 2011) (per curiam) (citing *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) (per curiam)); *see also Cothran v. Potter*, 398 Fed. App'x 71, 73-74 (5th Cir. 2010) (per curiam) (same). However, "the temporal proximity must be 'very close.'" *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007) (quoting *Breeden*, 532 U.S. at 273).

In this case, Ganheart alleges that she filed her complaint on August 27, 2014, and met with several colleagues to discuss the complaint on August 28, 2014.[24] Ganheart also alleges that a supervisor—one of the colleagues with whom she discussed her complaint on August 28—changed the performance evaluation rating in her 2015 performance evaluation in December 2014.[25] According to Ganheart, the 2015 performance evaluation covered January to December 2014.[26] If the performance evaluation covered December 2014, then the initial rating—and change to it—would have occurred in late December 2014, meaning that about four months

---

[24] *Id.* at 2-3.
[25] R. Doc. No. 26, at 3.
[26] R. Doc. No. 26-2, at 3; *see also* R. Doc. No. 23, at 2 (noting that the 2015 performance evaluation reflected work in 2014).

separated Ganheart's filing of her complaint and the change to her performance evaluation rating.

However, unless supported by additional evidence, "temporal proximity of four months is not close enough." *Ajao v. Bed Bath and Beyond Inc.*, 265 Fed. App'x 258, 265 (5th Cir. 2008); *see also Breeden*, 532 U.S. at 273-74. As Ganheart offers no other factual allegations to support a causal connection, the retaliation claim related to her 2015 performance evaluation is dismissed.

### III.

The Court must also consider whether to dismiss Ganheart's claims with or without prejudice. The Court will dismiss Ganheart's claim related to her 2016 demotion without prejudice to give her an opportunity to pursue her administrative remedies. The other claims are a different matter.

*Pro se* litigants such as Ganheart are "entitled to special accommodation by the judiciary." *Castro Romero v. Becken*, 256 F.3d 349, 353 (5th Cir. 2001). "Generally a district court errs in dismissing a *pro se* complaint for failure to state a claim under Rule 12(b)(6) without giving the plaintiff an opportunity to amend." *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998) (per curiam); *see also Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986) ("Dismissing an action after giving the plaintiff only one opportunity to state his case is ordinarily unjustified.").

At some point, however, "a court must decide that a plaintiff has had fair opportunity to make [her] case; if, after that time, a cause of action has not been

established, the court should finally dismiss the suit."[27] *Id*. For example, if a court concludes that a plaintiff has alleged her "best case," then dismissal with prejudice is appropriate. *Bazrowx*, 136 F.3d at 1054.

The Court has already provided Ganheart with one opportunity to amend her complaint.[28] In response to that opportunity, Ganheart provided the Court with an amended complaint,[29] a supplement to the amended complaint,[30] a copy of her EEOC official charge,[31] and two email chains.[32] These materials are "fairly thorough." *Goldsmith v. Hood Cty. Jail*, 299 Fed. App'x 422, 423 (5th Cir. 2008) (per curiam). As such, Ganheart appears to have pleaded her best case. Having failed to respond to the City's motion to dismiss, Ganheart does not suggest otherwise.

In any event, the Court has provided Ganheart with an opportunity to amend her pleadings and in this case it need not provide another. The Court will therefore dismiss Ganheart's remaining claims with prejudice.

## IV.

Accordingly,

**IT IS ORDERED** that the City's motion to dismiss is **GRANTED**.

---

[27] *Cf. Parra v. Coloplast Corp.*, No. 16-14696, 2017 WL 24794, at *5 (E.D. La. Jan. 3, 2017) (Vance, J.) ("Because plaintiffs have already had one opportunity to amend their petition and continue to provide nothing more than conclusory allegations, the petition will be dismissed with prejudice.").
[28] R. Doc. No. 20, at 5.
[29] R. Doc. No. 23.
[30] R. Doc. No. 26 (styled as an amended complaint).
[31] R. Doc. No. 26-2.
[32] R. Doc. No. 23-1; R. Doc. No. 26-1.

**IT IS FURTHER ORDERED** that Ganheart's claim related to her 2016 demotion is **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that Ganheart's remaining claims are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, September 11, 2017.

_[signature]_
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**